WILLIAM J. C. MILLIKEN, WESLEY M. MEWER, CARL H. DAVIS, WILBUR F. EMMONS, H. DAYTON BENWAY, ASHLEY L. TARBOX, GEORGE H. KITCHEN, FRED L. GOOCH, JOHN E. KENNETT, FRANK H. LIBBY, KING E. SEARS, FRANK H. JEWETT

*vs.*

HOWARD GILPATRICK, TREASURER OF THE TOWN OF OLD ORCHARD BEACH, ARTHUR W. MCLEOD AND THE INHABITANTS OF THE TOWN OF OLD ORCHARD BEACH.

York.      Opinion December 28, 1931.

*Harry C. Wilbur,*
*Wesley M. Mewer,* for plaintiffs.
*Willard & Willard,* for defendants.

SITTING: PATTANGALL, C. J., DUNN, STURGIS, BARNES, FARRINGTON, THAXTER, JJ.

FARRINGTON, J.   Bill in equity by twelve taxable citizens of the town of Old Orchard Beach, under the provisions of Subdivision

XIII of Sec. 36, Chap. 91, R. S. 1930, providing that "When coun-
ties, cities, towns, school districts, village or other public corpora-
tions, for a purpose not authorized by law, vote to pledge their
credit or to raise money by taxation or to exempt property there-
from, or to pay money from their treasury, or if any of their offi-
cers or agents attempt to pay out such money for such purpose,
the court shall have equity jurisdiction on petition or application
of not less than ten taxable inhabitants thereof, briefly setting
forth the cause of complaint," seeking an injunction against the
payment to Arthur W. McLeod, one of the duly elected and quali-
fied selectmen of said town, of any sum of money for what is al-
leged in the bill as salary for his services as Clerk of the Board of
Selectmen for 1931 and asking that the town be reimbursed for
whatever money had been paid to said McLeod prior to the bring-
ing of the bill, with general prayer for relief.

Both temporary and permanent injunctions were denied and by
the decree of the presiding Justice the bill was, after due hearing,
dismissed with costs, and the case comes to us on appeal from that
decree.

The presiding Justice found that the town at its annual town
meeting of 1931 "voted to pay thirty dollars a week to the person
who performed the duties of remaining in attendance at the town
hall and doing extra work required of the Board of Selectmen of
the town of Old Orchard Beach" and that the purpose for which
the town voted to pay this money was a purpose authorized by law,
"namely, to pay for services rendered by Mr. McLeod, which serv-
ices were for the government of the said town * * * ."

The annual town meeting of the defendant town was held on
Monday, March 2, 1931, and at that meeting Arthur W. McLeod,
one of the defendants, Lyman Abbott and Fred I. Luce were duly
elected as selectmen and were duly qualified.

In order to furnish the proper background, it will be well to go
back to 1925 when, as far as the record shows, the first action was
taken to provide that one selectman should be on duty every day.

Mr. Luce, who was town clerk from 1925 to 1931 inclusive, tes-
tified from the records of the annual town meeting of March 2,
1925, that under an article "To see what action the town will take

in relation to pay of town officers" it was, among other things, "Voted to have one of the selectmen on duty at the town hall five hours per day throughout the year, the salary to be twenty-five dollars per week. In addition to handling the general town business that may develop he shall do all the work on the assessors' books without additional pay and shall collect all special licenses and supplementary taxes." He also testified that under another article in the warrant "To see what sum of money the town would raise for the pay of town officers," it was voted to pay town officers twenty-eight hundred and fifty dollars, and to take from the contingent fund five hundred dollars.

From his testimony, it also appeared that at the annual town meeting in 1926, under an article in the warrant to see what action the town would take in regard to pay of town officers, it was "Voted to pay town officers the same salary as last year, under same provisions," and that under another article in the warrant to see what sum of money the town would raise for pay of town officers it was "Voted to appropriate for the pay of town officers twenty-eight hundred and fifty dollars; five hundred dollars to be taken from the contingent fund. The same arrangements as last year in regard to one Selectman."

It also appeared from his testimony that at the annual town meeting in 1927 under an article in the warrant to see what action the town would take in relation to pay of town officers, it was voted to appoint a committee of three to investigate and report later in the meeting. That committee's report, which was accepted and the recommendations of which were adopted, was as follows: "We recommend the following pay increases of town officers and that the sum of sixteen hundred and ten dollars be added to the regular appropriation of twenty-eight hundred and fifty dollars to meet the same, Clerk of Board of Selectmen increased from twenty-five dollars to thirty dollars per week, two hundred and sixty dollars."

From the printed record of the case, it may be concluded that the town voted an appropriation sufficient to cover the increases and the same amount of twenty-eight hundred and fifty dollars for pay of town officers that was raised the previous year.

Mr. Luce was asked the question, "And the man that was called

'Clerk' was the man who stayed on duty five hours a day, as provided in the vote of 1925?" and he answered, "Yes." and it appeared that he himself performed the same duties voted in 1925 and was designated as clerk, and that he himself drew the compensation as such clerk or full time member of the Board from 1925 to 1930 inclusive, and that he drew the first week's pay for 1931.

In the annual town meetings of 1928, 1929 and 1930 on articles to see what action the town would take in relation to pay of town officers, it was voted to pay the several town officers the same amounts as were paid the year before, and "under the same arrangement," or equivalent words, the only difference being a $200 increase for treasurer. Mr. Luce stated that in 1928, under the article to see what sum of money the town would raise for the pay of town officers, the record, without showing a vote to appropriate, was, under the heading of appropriations, "Town officers $4500, any deficiency from contingent fund." On a similar article, in 1929 the record was "Appropriations, Town. Pay town officers $4500, under same arrangements as last year." And in 1930 the record was "Town appropriations. Pay of town officers, $4500. Balance contingent fund."

Mr. Luce testified that under an article in the warrant for the town meeting of March 2, 1931, "to see what action the town will take in relation to pay of town officers," the recorded vote was, "Voted to pay the same as last year.", and that that was the whole record and that there was nothing in the vote about taking from the contingent fund. He testified that under an article in the warrant to see what sum of money the town would raise for the pay of town officers the record was "Town officers $4500."

While in 1928, 1929, 1930 and 1931 the record in words did not disclose a vote, this Court has a right to and does assume that what ought to have been done was done and that an actual vote was taken.

The record of the case shows that $4,500 was the same amount raised for the pay of town officers from 1927 to and including 1931 and that it carried the compensation of selectmen and other town officers except as provision may have been made for taking any portion from the contingent fund.

There is nothing in the printed record of the case to show that from 1927 to 1931 a salary was voted for any one member of the Board of Selectmen as specifically different from that of the others, except as to the one who might be selected as full time member, and no specific appropriation for a salary for a "clerk" of the board as such is shown, but we do not regard those facts as of importance. Mr. Luce, who from 1925 to 1930 inclusive drew first the $25 a week and later the $30 a week, testified that the one who was on duty five hours a day, as provided in the vote of the 1925 town meeting, was called the "clerk." The report of the committee which in 1927 recommended certain pay increases clearly used the words "Clerk of Board of Selectmen" as applied to the selectman who under the 1925 vote, and thereafter, might be selected to be on duty at the town hall five hours each day throughout the year. Nowhere except in 1927 is reference of record made to the full time member as "clerk."

We agree that no payment of salary could be legally made by a town unless specifically authorized either by statute or by vote of the town.

In the instant case we regard the compensation to Mr. McLeod, the one selected to do full time service, as having been authorized by vote of the town at its annual meeting in 1931 and that that vote had back of it statutory authority found in Sec. 86, Chap. 13, R. S. (1930) providing that "a town having less than three thousand inhabitants may, by majority vote at its annual town meeting fix the compensation of its board of selectmen, allowing such sum as may be commensurate with the duties of the office."

We find nothing in the case which warrants the conclusion that the full time member of the Board of Selectmen was intended to be regarded, or that he was regarded, as one holding the position of a clerk in a capacity separate and distinct from his position as a member of the board. It was not unnatural or strange that the man who was chosen to be on duty at the town hall should in time be called the clerk, and the natural thing happened. In this same connection we do not regard it as important that the evidence shows that at the meeting of organization on March 7, 1931, Mr. McLeod was elected as clerk of the Board. In our opinion it meant nothing

more than that he was chosen for the full time service and his compensation had already been fixed by vote of the town meeting on March 2, 1931.

There is undisputed evidence that Mr. McLeod, after his election as the so-called clerk, made up his records of that meeting and that he inscribed on those records a memorandum taken from the town clerk's books to the effect that the full time selectman was to be in the town hall five hours per day and also make up the assessors' books at the salary of $30 a week. This certainly indicates his understanding of the capacity in which he was working, regardless of the appellation of "clerk."

As far as the case before us is concerned, we see no force in the suggestion that McLeod was not an assessor, and that he had not done any work on the assessors' books nor collected any special taxes nor license fees. We are not here confronted by any problem arising out of suit to collect salary.

While the conduct of town meetings and the manner of taking and recording the various votes as representing the action of the town at those meetings might well be improved, as also the manner of recording the votes appropriating money for various purposes, yet, where, in connection with pay of town officers, it was "Voted to pay the same as last year," we do not regard it as fatal to the validity of such a vote that it might become necessary to go back over the previous years when similar votes were passed until a definite vote should be established as shown by the facts of the case at bar. The 1925 record is clear and the 1927 record is also established. We can not doubt that the voters at the 1931 meeting had full means and opportunity to know, and that they did know, what they were doing, and that the will of those voters as expressed by the words, "Voted to pay the same as last year," even with the omission of the words, "under the same arrangement," signified that the town officers were to receive the compensation that had been paid the year before and impliedly under the same arrangement. A careful reading of the record leads to the belief that Mr. Luce could have explained why the 1931 town clerk's record made no reference to the arrangement of previous years. But it is not necessary to discuss or consider what reasons or mo-

tives led to the bill in equity which has brought the matter to this court.

After a careful consideration of the entire record of the case, our conclusion is that the 1931 vote was to pay thirty dollars a week to the selectmen who should perform full time duty, as found by the presiding Justice, and we regard the purpose for which the town voted to pay this money as a purpose authorized by law. We see no reason to disturb the findings below.

The entry must be,

*Appeal dismissed.*
*Decree below affirmed.*